**ALGIE SPEARS**

**Petitioner**

**-versus-**

**DARRELL VANNOY, WARDEN**
**Louisiana State Penitentiary**
**Respondent**

## MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 USC §2254

May It Please This Court:

NOW INTO COURT, comes Algie Spears, pro se indigent petitioner herein and request to proceed in forma pauperis.

His Petition for Writ of Habeas Corpus pursuant to 28 USC §2254 challenged the many violations of the United States Constitutional and Louisiana Constitutional Rights.

## JURISDICTIONAL STATEMENT

Jurisdiction is vested in this Honorable Court by virtue of 28 USC §2254 et seq.

## WRIT GRANT STATEMENT

Petitioner's federal habeas should be granted pursuant to 28 U.S.C. § 2254(d) for the following reasons: there has been a state court adjudication of all the issues presented in this petition; the issues in question involve federal law; the issues were adjudicated in formal state court proceedings; and the adjudication resulted in a decision that was contrary to clearly established federal law under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. As discussed below, this petition is timely filed within the delays allowed by law.

## STATEMENT OF THE CASE

The Factual and Procedural History are taken from the Court of Appeal, First Circuit of Louisiana decision cited at State v. Spears, _____ So.3d _______ #2012/KA/1706. (La.App. 1st Cir. 2013), writ denied So.3d _____ (La. 4/4/2014)

## CLAIMS FOR RELIEF

1.

The Initial Stop By A St. Tammany Sheriff Officer On The Evening of Alleged Offense occurred Absent Probable Cause Violated Applicant's Fourth and Fourteenth Amendment Right Of The United States Constitution and Article 1 § 5 of the Louisiana Constitution.

2.

The Showup Identification Procedure Employed By The St. Tammany Sheriff Department Was Impermissibility Suggestive In Violation Of The Sixth And Fourteenth Amendments of the United States Constition.

3.

Applicant Was Denied Effective Assistance Of Counsel At Sentencing

4.

Applicant Was Denied The Right To Effective Assistance Of Counsel Before, During And After Appellate Process.

**1.**

**The Initial Stop By A St. Tammany Sheriff Officer On The Evening of Alleged Offense occurred Absent Probable Cause Violated Applicant's Fourth and Fourteenth Amendment Right Of The United States Constitution and Article 1 § 5 of the Louisiana Constitution.**

On the morning of trial, the court denied applicant's Motion to Suppress Evidence. The denial violated applicant's constitutional state and federal rights.

The facts surrounding the unlawful stop that later resulted in applicant being identified as the person who unlawfully entered the residence of Marcy Ann Schaffer were testified to by Detective Tray Mahon.

Direct Examination by Mr. Oubre:

Q. . . . What was the call? What was urgency?

A. We got a report of a female caller who called and said there was someone inside her residence.

Q. It was---

A. Yes, someone was in a residence that wasn't supposed to be there.

Q. And was still there?

A. Correct

Q. So everybody responded that could?

A. Yes.

Q. On your way there, did you notice something that was drawn to your attention?

A. . . . . As we were passing the 300 block, there was a van parked on the right side of the road that the front ties were out like it was on its way pulling out with no headlights on as we passed, and it stopped to let the first unit pass.

Q. Did you make a decision to investigate that further?

A. I did.

Q. Why did you decide to do that?

A. Just because of the close proximity of the house. It was maybe two houses down. The house that it was in front of is an unoccupied house. The fact that it's pulling off with no headlights on at the same time that --- the police station is, you know, a just a couple of blocks away from the house, so we were there in maybe a minute, maybe less than a minute.
So close proximity in time, close proximity in location, leaving without the headlights just was enough to raise our suspicion.

Q. Were you able to effect a traffic stop?

A. Yes.

Motion to Suppress Transcript, page 49/113-51/115

As can be seen, Detective Mahon based his stopping of applicant's vehicle on "no headlights on when pulling out" Detective Mahon concluded it was "enough to raise our suspicion." This detective is a seasoned law enforcement officer who viewed a mere innocent driver pulling out with his headlights off as suspicious activity. Mostly, strange is the fact that, when the vehicle was stop the individual occupant of the vehicle was not a suspicious character as one would believe if he was engaging in criminal activity, or having just engaged in criminal activity as recognized by LSA-C.Cr.P., Art. 215.1. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); State v. Frank, 883 So.2d 1107, 2004-0592 La. App. 3 Cir. 9/29/04; State v. Huntley, 97-0965 (La. 3/13/98), 708 So.2d 1048.

A police officer has the right to detain briefly and interrogate a person when the officer has a reasonable articulable suspicion that the person is, has been, or is about be engaged in criminal conduct. To justify an investigatory stop police must articulate something more than an inchoate and un-particularized suspicion or hunch. The level of suspicion for an investigatory stop need not rise to the probable cause required for a lawful arrest. In making a brief investigatory stop on less than probable cause to arrest, the police must have a particularized and objective basis for suspecting the particular person stopped of criminal activity State v. Moreno, 619 So.2d 62 (La. 1993); State v. Williams, 421 So.2d 874 (La. 1982) (mere suspicious activity is not a sufficient basis for police interference with an individual's freedom).

Detective Mahon's reason for stopping applicant did not raise to the level of suspicion warranting an investigatory stop. He reasoned that somehow applicant may have been connected to the incident occurring at the resident of the victim.

This theory should not have been sufficient either, simply because applicant was a resident in that area and due to the time, and place applicant could have been visiting friends or relatives in the neighborhood.

Detective Mahon weighed his suspicion on three points: 1) close proximity in time; 2) close proximity in location; and 3) leaving without the headlights [on]. Detective Mahon immediately included applicant as a suspect in whatever criminal activity that may have occurred.

Conclusions as these should not have been the factors to equate applicant with criminal activity.

That conclusion lead Detective Mahon to back track applicant when the description was given and include him as the only person available to meet the general description of the assailant.

These ill-factors resulted in a suggestive identification procedure and alternately lead to applicant's arrest, conviction and sentence for the crime of Unauthorized Entry of an Inhabited Dwelling.

This Honorable Court must now reverse the conviction and sentence of applicant, Algie Spears and enter a judgment of trial anew.

**2.**

**The Showup Identification Procedure Employed By The St. Tammany Sheriff Department Was Impermissibility Suggestive In Violation Of The Sixth And Fourteenth Amendments of the United States Constitution.**

In this claim for relief, applicant argues that his conviction and sentence should be reversed because the trial court erred in denying his pre-trial motion to suppress the one-on-one show up identification made by the victim. A "one-on-one show up" concerns "an identification procedure that takes place shortly after a crime is committed, usually at the scene of the crime or the apprehension of a suspect, whereby a victim is asked whether the victim recognized a person suspected to be the perpetrator of a crime against the victim." State v. Harold, 03-0649, p.6 (La.App. 4 Cir. 11/12/03), 861 So.2d 262, 265, n. 2. Applicant asserts that the trial court's failure to suppress the one-on-one show up identification allowed the prosecution to elicit unreliable in-court identification at trial.

Applicant is well aware that a reviewing court will not disturb a trial court's determination on the admissibility of an out-of-court identification unless the record reveals an abuse of discretion. State v. Weathersby, 09-2407, p. 4 (La. 3/12/10), 29 So.3d 499 (per curiam); State v. Bickham, 404 So.2d 929, 934 (La. 1981).

A reviewing court is not limited to the evidence adduced at the hearing on the motion to suppress, but it also extends to evidence adduced at the trial. State v. Lewis, 04-0227, p. 18 (La. App. 4 Cir. 9/29/04), 885 So.2d 641, 652.

To prevail on such a motion, the defendant must show two things: that the identification procedure was suggestive, and having substantiated that, he must show that there was substantial likelihood of misidentification as a result of the suggestive identification procedure. State v. Higgins, 03-1980, p. 19 (La. 4/1/05), 898 So.2d 1219, 1231-32.

At the Motion to Suppress, Marcy Ann Schaffer testified to the following:

Q. Taking you back to August 21st 2011 did you discover something that caused you to call the police?

A. Yeah.

Q. What did you discover?

A. I discovered a guy in my kitchen peeping around the corner at me.

Q. How big is the house that you rent?

A. Two bedrooms

Q. If you're sitting on your bed in your bedroom, can you see through the hall to the kitchen?

A. Yeah.

Q. And where were you when you discovered someone in your house?

A. I was sitting on the end of my bed with my back turned to the door, and then I turned around and that's when I saw him in the kitchen.

Q. What were doing?

A. I was reading a magazine.

Q. What?

A. I was reading a magazine on the bed.

Q. Lights were on?

A. Uhm-hum (Affirmative response). All the lights in the house were on.

Q. When you looked up, what did you see?

A. I saw like half of his body, but I saw his whole head. And he was like around the corner, and as soon as he saw me make eye contact, he hurried up and he pulled back, and then I jumped up and closed my door and locked it and then I called the cops.

Motion to Suppress, pages 66/130-67/131.

* * * * * * *

Q. What description did you give if you could remember?

A. Bald head, and like, I just remember his eyes were, like, like kind of sunken in. Like, I just remember, like, features of his face.

Q. Tall, short, fat, skinny?

A. Yeah. Like, my height, tallish.

Q. Fat, skinny?

A. A belly.

Q. A belly?

A. I just saw his stomach. That's all I saw.

Motion to Suppress, pages 67/131-68/132

In analyzing Ms. Shaffer's testimony at the Motion to Suppress Hearing she describes the intruder as a man tall, bald belly , eyes kind of sunken in man. (MTS.p. 67/131-68/132). Applicant is between 5'7 and 5'9 tall. Ms. Shaffer was taller than applicant.

Another point of consideration by the court is the very description given by Ms. Shaffer was never disclosed at any phase of the criminal prosecution. So then, all that is left is a determination of whether the out of court identification (the show-up at the Shaffer resident) was impermissively suggestive.

An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. State v. Thibodeaux, 98-1673, p. 20 (La. 9/8/99), 750 So.2d 916, 932. In determining the likelihood of misidentification of a suspect, a court must look to the "totality of the circumstance" as informed by the five factors set forth by the United States Supreme Court in Neil v. Biggers, supra., 409 U.S., at 199-200, 93 S.Ct. 375. These factors include "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." Id, Any corrupting effect of a suggestive identification is to be weighed against these factors. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 140 (1977).

Each of the factors must be satisfied in order for an out of court identification meet constitutional muster, the lack of any one of these factors makes the identification faulty and must be suppressed.

Here, there is a key factor that must not be overlook. Ms. Shaffer stated the intruder was a black man. Did this mean that he a black man in terms of race, or black in terms of physical skin tone. That question was never answered and it would could cover the test of Manson v. Brathwaite, supra. Her out of court description included: "A black man; bald head; belly; tallish." Ms. Shaffer stressed the fact she focus on his facial features, however, she never said how the intruder's facial features were so distinguishable or what the features were. No where in the record is there one features she pointed out that made applicant stand out. Another factor to consider is this, there was no other African American men present but applicant at the show up for a comparison of the mysterious facial features.

The identification of applicant in this case did not satisfy the Biggers, Manson test in determining that the identification was constitutional sound as concluded by the trial judge in his ruling to deny the Motion to Suppress Identification. The trial court erred and a new trial must be conducted.

**Applicant Was Denied Effective Assistance Of Counsel At Sentencing**

Both the Louisiana and federal constitutions guarantee a criminal defendant's right to assistance of counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2D 799 (1963); State v. Taylor, 20 So.3d 1157, 44,367 La. App. 2 Cir. 9/23/09, and our law requires that the assistance be effective. Typically, a defendant must show that his attorney's performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In some cases, however, a defendant is entitled to relief absent a showing of deficiency or prejudice. Those cases are limited to instances where a defendant is denied counsel at a critical stage of the proceedings, when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing (bold print emphasis) and when the circumstances surrounding a trial prevent the defendant's attorney from rendering effective assistance of counsel. Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

A defendant is also given the right to effective assistance of counsel at the sentencing phase of his criminal prosecution. (cite case here) Applicant was not afforded this essential right. As this court will take note the law is clear on the validity of his sentence and this court will find that this sentence does not rest of a valid adjudication during his Habitual Offender Proceeding because his counsel at sentencing deprived him of it.

*La. C.Cr.P. Article 872(3)*, requires that: (a) valid sentence **must** rest upon a valid and sufficient .... verdict, judgment, or (p)lea of guilty. ***State v. Patterson***, 384 So.2d 790 (La. 1980); ***State v. Martin***, 2011-1843, 92 So.3d 1027, 2012 WL 1548949 (La. App. 1 Cir. 5/12/12).

The State failed to established the ten (10) year "cleansing period" have not elapsed between the Second Degree Battery (*R.S.14:34.1*) Conviction and the Unauthorized Entry of an Inhabited Dwelling (*R.S.14:62.3*)

It is a well settled principle of law that due process requires that the state bears the burden of proving that the predicate convictions fall within the "cleansing period" prescribed by *La.R.S. 15:529.1(C)*.

"This Section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted.

In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the states, shall not be included in the computation of any of said ten year period." Id.

The ten-year "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision. *State v. Thomas*, 938 So.2d 168, 2005-2210 La. App. 1 Cir. 6/9/06 (La.App. 1 Cir. 2006); *State v. Anderson*, 349 So.2d 311, 314 (La. 1977). Thus, the commencement of the "cleansing period" is from the date of discharge from state supervision, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. *State v. Johnson*, 2003-2993 (La. 10/19/04), 884 So.2d 568, 578-79. However, if less than the "cleansing period" has elapsed between a defendant's conviction on a predicate felony and his commission of a subsequent predicate felony, the state need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. *State v. Brooks*, 01-864, p. 12 (La. App. 5 Cir. 1/29/02), 807 So.2d 1090, 1101, citing *State ex rel., Clark v. Marullo*, 352 So.2d 223, 230 (La. 1977) and *Johnson*, supra,.

In this case, more than the ten-year "cleansing period" has elapsed between the defendant's conviction on the 2011 predicate felony and his commission of the subsequent offense of 1999. The state was required to prove that the underlying offense was committed within ten years of the defendant's release from state custody for the predicate conviction in case number 95-CR4-61062.

There is an eleven year different between Movant's present conviction (December 14, 2011) for Unauthorized Entry of an Inhabited Dwelling (*R.S. 14:62.3*) and previous conviction (November 5, 1999) for Second Degree Battery.

Petitioner received a sentence of six (6) months for the Second Degree Battery guilty plea that expired July, 2000.

The record is clear that the ten year cleansing period has elapsed between the November 5, 1999 conviction and the November 14, 2011 conviction and the conviction for Second Degree Battery and sentence of six (6) months can not used to adjudicate Movant as a third offender.

**4.**

**Applicant Was Denied The Right To Effective Assistance Of Counsel Through out His Criminal Prosecution and Appellate Review.**

**THE STANDARD OF REVIEW**

The Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] standard requires that a defendant meet the two prong test of: 1) Counsel's performance was deficient; (This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Six Amendment) and, 2) Counsel's deficient performance prejudiced the defense. (This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable).

**A. Counsel's Performance was Deficient**

(1.)

The first instance where appointed trial counsel decided not to further pursue certain issues refers to the trial court's abuse of discretion in not granting the Motion to Suppress the Lack of Probable Cause.

In the court's ruling on the probable cause for the stop that lead to the faulty identification of applicant should have stood on it own instead of resting on the show up identification. The initial stop had no basis that would warrant retracting applicant for a show up identification.

The court's ruling was founded on applicant driving with his "headlights off". It was not applicant had been driving some distance (a street block or two), he pulled out from his parking space lights off and then the stop.

The instructions by the officer and the immediately his lights were turned on, acknowledging human error was reason and continuing on to his resident. Just those facts alone would not render probable cause to back track applicant to his resident, take him from his home, to the victim's home where amiss shinning lights identify him as the intruder she saw in her home. The probable cause was based on the identification instead of the events that led up to the identification and subsequent arrest.

Counsel objected to the court's ruling and left it at that. No further pursue in that matter.

This choice was not one based on sound judicial scrutiny. Counsel had before him further options. One, to seek writs to the circuit court for a second opinion on the subject matter. Or, assigned the matter for appeal. Applicant did not have a full and fair evaluation of his fourth amendment claim.

The second instance where appointed trial counsel decided not to further pursue certain issues refers to the trial court's abuse of discretion in not granting the Motion to Suppress the Identification.

One sufficient factor overlooked by appointed counsel concerned Ms. Shaffer initial description of the intruder. She generalized the male. She described most of the middle age African American Men in that area of town.

Some form of investigation could easily produced a listing of African American Men with that description. Yet, appointed counsel's choice to not pursue further investigation yielded his client effective assistance of counsel.

Another sufficient factor, Ms. Shaffer stated when she turned around she looked up and "saw like half of his body, but I saw his whole head" (p. 67/131) It was when their they made eye contact that the intruder jumped back (out of view) and she saw him no more. Ms. Shaffer also stated her focus was on facial features, yet she gave none.

Most critical to the suggestive identification was the fact that Ms. Shaffer when made the identification of applicant he was handcuffed. This is a clear indication that applicant was the man. Handcuffed, no shirt on in short pants. That how Ms. Shaffer remember seeing him. Completely suggestive from that stand point of view.

Appointed counsel overlooked three (3) crucial factors about the identification and that there really was no probable cause for the stop. Appointed counsel went through the motions without any diligence or having any grave concern for the interest of his client. Appoint counsel's actions amounted to another day in court.

(2.)

Amiss the many objection lodged during trial, none were assigned as error for appellate review. Appointed counsel lodged a number of objection to events that transpired during this criminal prosecution only one was assigned and argued on direct appeal.

At the conclusion of trial appointed counsel filed two (2) motions: 1) Motion for Post Verdict Judgment of Acquittal and Motion for a New Trial.. From these motions, the single assignment of error was lodged and argued on direct appeal.

The heart of the case stems around probable cause and identification yet neither were assigned, briefed and argued on direct appeal.

Finally, the sentencing issues ignored and abandon forces applicant to bring them now.

Yes, appointed counsel performance was deficient.

**B. <u>Counsel's Deficient Performance prejudiced the defense</u>**

The heart of the prosecutions case rested on the identification of the intruder. It was clearly suggestive resulting in applicant being deprived of a fair trial. Appointed counsel set by and allowed the proceeding to go on without a cry.

Even at trial Ms. Shaffer identification confirmed the suggestive tactics of police on the night of the alleged intrusion.

Compounded with the these and the sentencing issues argued in this uniform application for post conviction relief. It is clear that appointed counsel performance was deficient and absent those deficiencies the out come of the proceeding would have been different.

## CONCLUSION

Wherefore, considering the foregoing rationale and jurisprudence, Applicant, Algie Spears prays that this honorable court reverse the conviction and sentence, thereafter, ordering a trial anew.

Or, in the event, this Honorable Court sees that the facts presented herein warrant further investigation because if established would entitled applicant to relief, an evidentiary hearing be ordered to call the necessary witnesses to establish the record for a complete review.

Respectfully submitted by:

Algie Spears

ALGIE SPEARS, PRO SE
DOC#98786, Walnut #2
Louisiana State Penitentiary
Angola, Louisiana 70712

**CERTIFICATE OF SERVICE**

I, ALGIE SPEARS, DOC#98786, hereby certify that I have served a true and correct copy of the above and foregoing upon the District Attorney, Parish of St. Tammany, on behalf of the Respondent herein, by placing same in the United States Mail, properly addressed and with proper first-class postage affixed this day of 11-11-2016, 2016.

Algie Spears
ALGIE SPEARS