## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ALGIE SPEARS                                                CIVIL ACTION

VERSUS                                                      NO. 17-2043

DARREL VANNOY, WARDEN                                       SECTION: "I"(5)

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

## Procedural History

Petitioner, Algie Spears, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    Spears was charged with unauthorized entry of an inhabited dwelling.[1]    On December 14, 2011, a jury found him guilty as charged.[2]    On January 4, 2012, the trial court denied his motions for a new trial and for post-verdict judgment of acquittal and sentenced him to six years imprisonment at hard labor.    His

---

[1]  State Rec., Vol. 1 of 4, Bill of Information.

[2]  State Rec., Vol. 1 of 4, Minute Entry, 12/14/11.

motion to reconsider the sentence was denied.    The State subsequently filed a multiple-offender bill of information.    Defense counsel filed a motion to quash the multiple-offender bill.    On September 6, 2012, the trial court held a partial multiple offender adjudication hearing, but ordered the matter continued to allow defense counsel to file an amended motion to quash.[3]    On November 8, 2012, the trial court vacated the original sentence, adjudicated Spears a third-felony offender and sentenced him to 10 years imprisonment under Louisiana Revised Statute 15:529.1, to run consecutively with his parole sentence.[4] On or about May 20, 2013, he filed a motion to correct an illegal sentence, which was denied.[5] On October 8, 2013, his related writ application was denied by the Louisiana First Circuit Court of Appeal.[6]    He did not seek discretionary review of that ruling with the Louisiana Supreme Court.

Spears also appealed the conviction, asserting that the evidence was insufficient to support a conviction for unauthorized entry of an inhabited dwelling.    On September 13, 2013, the Louisiana First Circuit Court of Appeal affirmed the judgment.[7]    On April 4, 2014,

---

[3]  State Rec., Vol. 1 of 4, Minute Entry, 9/6/12; State Rec., Vol. 2 of 4, Transcript of Multiple Offender Hearing (September 6, 2012).

[4]  State Rec., Vol. 1 of 4, Minute Entry, 11/8/12; State Rec., Vol. 2 of 4, Transcript of Multiple Offender Hearing (November 8, 2012).

[5]  State Rec., Vol. 3 of 4, "Motion to Correct an Illegally Invalid Sentence" with signed Order and Notice denying motion dated May 28, 2013.

[6]  State Rec., Vol. 3 of 4, *State v. Spears*, 2013-KW-1318 (La. App. 1 Cir. Oct. 8, 2013).

[7]  *State v. Spears*, 2012-KA-1706, 2013 WL 11253299 (La. App. 1 Cir. 9/13/13); State Rec., Vol. 3 of 4.

the Louisiana Supreme Court denied his application for a writ of certiorari.[8]

On or about March 23, 2015, Spears submitted an application for post-conviction relief to the state district court.[9]    In that application, he asserted that the trial court erred in denying his motion to suppress and allowing introduction of an impermissibly suggestive pretrial identification, and that he was denied effective assistance of trial counsel during the habitual-offender adjudication and appellate counsel for failing to assert suppression and identification claims on appeal.    On April 22, 2015, the district court denied post-conviction relief.[10]    On August 10, 2015, his related supervisory writ application was denied by the Louisiana First Circuit Court of Appeal.[11]    On October 28, 2016, the Louisiana Supreme Court likewise denied relief.[12]

On November 14, 2016, Spears filed his federal application for *habeas corpus* relief.[13] In that petition, he raises the same grounds for relief presented on collateral review.    The State concedes that he has exhausted his remedies in the state courts and that the federal application is timely.    The State argues that his claim regarding ineffective assistance

---

[8]  State Rec., Vol. 3 of 4, *State v. Spears*, 2013-KO-2434 (La. 4/4/14), 135 So.3d 638.

[9]  State Rec., Vol. 3 of 4, Application for Post-Conviction Relief.

[10]  State Rec., Vol. 3 of 4, State District Court Post-Conviction Relief Order signed April 22, 2015.

[11]  State Rec., Vol. 3 of 4, *State v. Spears*, 2015-KW-0894 (La. App. 1 Cir. Aug. 10, 2015).

[12]  State Rec., Vol. 3 of 4, *State ex rel. Spears v. State*, 2015-KH-1585 (La. 10/28/16), 203 So.3d 220.

[13]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

during the habitual offender adjudication is procedurally defaulted and the remaining claims

should be dismissed on the merits.[14]    Spears has not filed a reply.

## Facts

The following facts were established at trial and summarized by the Louisiana First

Circuit Court of Appeal:

> Twenty-year-old Marcy Schaffer and a roommate rented a two-bedroom house at 410 West 26th Street in Covington, Louisiana. She began living there in March of 2011. At approximately 11:30 p.m. on August 21, 2011, she was alone in the house and was reading a magazine on her bed when she [sic] a black male, later identified as the defendant, standing in her kitchen staring at her. Schaffer did not know the defendant and had never seen him before this incident. She jumped to her feet, closed and locked the bedroom door, and called 911. Although she was not sure how the defendant got into her house, Schaffer testified that she believed he entered through a broken window or possibly through the front door because the lock did not work properly.

> The house was located near the police station, and several officers arrived within minutes. The first officer to arrive, Covington Police Lieutenant James Beach, entered the house through a window because Schaffer was scared the perpetrator was still inside and would not unlock the doors. Lieutenant Beach unlocked a door, other officers entered, and the residence was cleared before Schaffer would leave her bedroom. She described the perpetrator as a black male with a bald head and pot belly.

> Upon hearing this description, an officer on the scene, Covington Police Detective Joseph Mahon, realized he had just stopped someone who fit that description. On the way to Schaffer's residence, Detective Mahon had noticed a van partially on the road about three houses from Schaffer's residence. Someone was seated in the van, but the headlights were off. After the van pulled away, Detective Mahon followed for a short distance then initiated a traffic stop. Although Detective Mahon later identified the driver as the defendant, at the time he allowed him to leave because he appeared calm and Schaffer had advised the 911 dispatcher that she thought the perpetrator was still in her house. After hearing Schaffer's description of the intruder, Detective Mahon left the house, apprehended the defendant, and returned him to the

---

[14]  Rec. Doc. 9.

scene. Schaffer then positively identified the defendant as the perpetrator.

Schaffer's next-door neighbor, Morris Batiste, testified he knew the defendant and played dominos with him a few times. On the day of the crime, Batiste saw the defendant outside around dusk, and again when the police brought him back to the crime scene. Batiste testified that the defendant had previously inquired about the victim and her roommate.

Another neighbor, Stephanie Boykins, testified that at approximately 11:00 p.m. on the night of the crime, the defendant visited her house for about ten minutes. She knew he had been drinking, but he refused Boykins' offer to drive him home. Boykins observed him driving slowly away in his van. Boykins spoke to Schaffer days later and said she was sorry for what happened, explaining that the defendant "always did tell me he liked you." Prior to trial, the defense filed a Notice of Alibi indicating that the defendant was with "Stephanie Barkins" at the time of the offense. Boykins, whose name was misspelled in the notice, denied that the defendant was with her at the time of the offense. The defendant neither testified, nor called any witnesses.[15]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall

---

[15]    *State v. Spears*, 2012-KA-1706, 2013 WL 11253299, at *1-2 (La. App. 1 Cir. 9/13/13).

have the burden of rebutting the presumption of correctness by clear and convincing evidence.").   With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).   A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.   *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).   An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.   A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.   *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an

incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A.  *Denial of Motion to Suppress*

Spears claims that the trial court improperly denied his motion to suppress in violation of the Fourth Amendment.    He argues that his subsequent identification by the victim resulted from Detective Trey Mahon's initial unlawful traffic stop.    The record reflects that officers arrived at the scene within minutes of the distress call.    Detective Mahon stopped a vehicle near the victim's residence as it was driving away without headlights.    After speaking with the driver, he allowed him to leave.    Detective Mahon testified that he realized after hearing the victim describe the intruder that the individual he had stopped earlier near the residence matched the victim's description.    Officers were quickly dispatched to locate the suspect from the vehicle stop and returned Spears to the scene where the victim positively identified him as the man she saw in her residence that evening.

Defense counsel moved to suppress the statements and identification and a pretrial hearing was held the morning of trial.[16]    Following testimony from Detective Mahon and the victim at the hearing, the trial court denied the motion to suppress.    Defense counsel raised an objection based on lack of probable cause for the traffic stop, which the trial court addressed and rejected, finding nothing flowing from the traffic stop that would give rise to suppression of any evidence.    Spears's challenges based on the Fourth Amendment and the Sixth and Fourteenth Amendments (due process) were considered and summarily rejected as meritless by the state courts on collateral review.    The Louisiana Supreme Court's ruling incorporated the state district court's written reasons denying the application.

As the State correctly notes in its response, Fourth Amendment violation claims generally are not cognizable on federal *habeas* review.    In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."    *Id.* at 494 (footnote omitted); *see also Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).    The *Stone* bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous. *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978).

A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state

---

[16]    State Rec., Vol. 1 of 4, Trial Transcript (December 13, 2011), pp. 48-82.

court.    *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).    The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without regard to whether he actually takes advantage of those processes. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity."); *see also Janecka*, 301 F.3d at 320.

In the instant case, Spears asserted a Fourth Amendment claim in the state district court, where he was afforded an evidentiary hearing.    He had the opportunity to raise the claim on direct appeal but did not; however, he later raised the claim on collateral review before all three state courts, including the Louisiana Supreme Court.    Because he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, *Stone* bars this Court from considering that claim.

   B.   *Impermissibly Suggestive Identification*

Spears's separate challenge to the alleged suggestive and unreliable "show-up" identification used against him at trial does not present a Fourth Amendment issue, but rather, a cognizable due-process claim.    He challenges the accuracy of the victim's physical description of the intruder and the inherently suggestive nature of the show-up identification where he argues he was the sole suspect viewed in handcuffs and in police custody.    The state courts denied the claim on collateral review.

To prevail on his claim that the victim's identification testimony derived from a suggestive identification procedure, a petitioner must show that the identification procedure was "so unnecessarily suggestive and conductive to irreparable mistaken identification that

he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). While initially it must be determined if the pretrial identification is impermissibly suggestive, even if a pretrial identification procedure is suggestive, a reviewing court will look to the totality of the circumstances in order to determine if the identification is nevertheless reliable. *Biggers*, 409 U.S. at 199-20. In making that determination, the Court considers the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Brathwaite*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199–200. This analysis involves a mixed question of law and fact. *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). This Court must therefore determine whether the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006); *Walker v. Vannoy*, Civ. Action No. 15-6809, 2016 WL 7485675, at *11 (E.D. La. Sept. 9, 2016), *adopted*, 2016 WL 7476334 (E.D. La. Dec. 29, 2016). The state court's ruling in this case was reasonable under controlling Supreme Court law in light of the record evidence presented.

At the hearing on the motion to suppress, the victim testified that all of the lights in the house were on when she saw Spears in her kitchen. She made direct eye contact with him from a short distance away and was able to describe distinctive physical features to

police, *i.e.*, "bald head, sunken eyes, belly, tallish."[17]    She testified that officers told her "if you're not sure, don't say that it is him."[18]    However, when officers presented him for identification, she knew "it was most definitely him."[19]    In ruling on the motion, the trial court acknowledged that a show-up identification procedure by its very nature is inherently suggestive.    The trial court observed that there was nothing suggestive about the manner in which the officers in this case presented the petitioner to the victim for identification other than the fact of the one-on-one identification in the street.    Nevertheless, the trial court also concluded that there was no substantial likelihood of misidentification, reasoning:

> [T]he reliability is strong in that she had a strong opportunity to observe this person in her house, made a very clear identification and description of the person to police.    Her testimony indicated that she was focused on his face and didn't even necessarily notice much else about his body, and that indicated to me that she was – because of the fear, she did focus on his physical features that she could describe to police.    She was very certain that this was the person she saw in her home, and there was a very short period of time between the time that she saw him in her house and the actual identification subsequent with the police present.[20]

Even at trial, the victim remained certain about her description of the intruder:

> Q. Did there come a point in time that the police asked you to take a
>
> look at somebody for this investigation?
>
> A. Yeah.

---

[17]    State Rec., Vol. 1 of 4, Suppression Hearing, pp. 67-68.

[18]    *Id.* at 69.

[19]    *Id.* at 70.

[20]    *Id.* at 80-81.

Q. How did that happen?

A. About an hour and a half later they came knocking on my door and said they have someone they want me to look at, and they brought me out to the street and brought him out from the cop car.

Q. Did they at any point tell you, we believe this is the person that did it?

A. Uhg-ug (negative response).

Q. When they brought him out of the cop car, where were you standing?

A. In the street.

Q. Was this individual handcuffed or not?

A. No.

Q. How was he clothed at this time?

A. He didn't have a shirt on, and he had shorts on.

Q. Was he lit up with those lights on him?

A. Yeah. Lights were on him.

Q. Were you able to identify this person?

A. Yes.

Q. Did you identify him because it's the person that the police brought back?

A. No. It's the person that I recognized.

Q. From what?

A. From being in my house.

Q. How sure are you?

A. One hundred percent sure.[21]

The victim expressed her certainty when she identified Spears at trial:

Q. Do you see that person in court today?

A. Uhm-hum (Affirmative response).

Q. Where?

A. He's right over there.

Q. How can you be sure?

A. Because I recognize his face. It's like burned in my memory.[22]

Spears disputes the accuracy of the victim's identification because she described him during the suppression hearing as "like my height, tallish."    He argues that he is actually shorter than the victim.    He claims she also described him as a "black man," which could mean either race or physical skin tone, which was not explored.    However, even if minor inconsistencies existed, the record in this case was clear.    The victim had a good opportunity to view the intruder, sufficient to recall his physical features in detail and with absolute clarity and provide an accurate description to police that substantially matched Spears's physical attributes.    In fact, the victim in this case had given that detailed description of the intruder well before the show-up identification.    The victim was able to

---

[21]    State Rec., Vol. 2 of 4, Trial Transcript, pp. 239-240.

[22]    *Id.*

make a positive identification within an hour and a half of the incident.

Thus, notwithstanding the fact that a show-up identification procedure may be considered inherently suggestive, the record in this case established that the victim's identification was extremely reliable. *See e.g.*, *United States v. Portis*, 16-134, 2017 WL 2311734 (E.D. La. May 26, 2017). The record discloses no substantial likelihood of irreparable misidentification. A review of the law and the record in this case demonstrates that the state court's decision denying this post-conviction claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Spears is not entitled to relief on this claim.

C. *Ineffective Assistance of Counsel*

Spears first claims that trial counsel was ineffective because he did not object during the multiple-offender adjudication when the State failed to establish that the 10-year cleansing period had not elapsed between the 1999 second-degree battery conviction and the instant offense.[23] The State argues that this claim was procedurally defaulted, citing the Louisiana Supreme Court's ruling incorporating the state district court's written reasons. The state district court concluded:

> In his third claim, petitioner objects to his representation during his sentencing as a third felony offender. The issue of whether he was properly adjudicated a third felony offender was raised in the Motion to Correct an Illegal Sentence and previously ruled upon as stated above. Furthermore, this is not an issue for post-conviction relief.

The Louisiana Supreme Court denied relief, stating:

> [Spears] failed to show he received ineffective assistance of counsel under the

---

[23] Rec. Doc. 1-1, p. 9.

standard of *Strickland v. Washington.* Relator's remaining claims are repetitive and/or unsupported.    We attach hereto and make a part hereof the District Court's written reasons denying relator's application.[24]

The State argues that given the state district court's reasoning incorporated by the Louisiana Supreme Court, the instant claim is barred as repetitive under Louisiana Code of Criminal Procedure articles 930.4(D) and (E), and non-cognizable under article 930.3 and *State v. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172.    The Court disagrees with the State's rationale.    The claim at issue is one of ineffective assistance of counsel during the habitual-offender adjudication.[25]    On collateral review, the Louisiana Supreme Court appears to have denied relief on his ineffective assistance claims *on the merits*, citing *Strickland v. Washington.*    The Supreme Court denied the remaining claims, that is, *claims other than ineffective assistance of counsel*, as repetitive and/or unsupported.    Therefore, the last reasoned decision by the state courts on the ineffective assistance of counsel during sentencing claim was not one of procedural bar under state law; rather, that federal claim appears to have been denied on the merits.    For this reason, the Court rejects the State's procedural-default argument and turns to the merits of the claim, as the State has argued in the alternative.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must

---

[24] *State ex rel. Spears v. State*, 203 So.3d 220 (2016) (citation omitted).

[25] Spears has not raised a claim regarding the sufficiency of evidence required under state law to support the habitual-offender adjudication.    Nor would such a claim have been exhausted in any event, as it was never presented to the Louisiana Supreme Court.

demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected Spears's ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective-assistance claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt."    *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

The substantive claim underlying the ineffective-assistance claim (namely, failure by the State to prove the applicable cleansing period for the second-degree battery predicate offense) was uniformly rejected by the state courts.    The issue was reviewed and rejected by the state district court and state appellate court on collateral review of Spears's motion to correct an illegal sentence.[26]    Nevertheless, Spears contends defense counsel should have objected that the cleansing period had expired on his 1999 conviction used by the State

---

[26]    State Rec., Vol. 3 of 4, Motion to Correct Illegal Sentence and Order denying signed May 28, 2013. *See also State v. Spears*, 2013-KW-1318 (La. App. 1 Cir 10/8/13).

to enhance his sentence.    The record shows that defense counsel actually did contest the

cleansing period before sentencing.    Although counsel made no verbal objection on the

record during the final hearing held November 8, 2012, he filed a written motion to quash

the multiple-offender bill, which specified numerous grounds including this one in

particular, on October 3, 2012.[27]    The trial court was therefore aware of the defense's

grounds for objection at the time of sentencing.    Following the multiple-offender hearing,

the trial court adjudicated him as a third-felony offender, concluding:

> The record clearly establishes that the defendant previously pled guilty to a
> violation of Louisiana Revised Statute 14:34.1, second degree battery, in the
> Twenty-Second Judicial District Court for the Parish of Washington in number
> 95-CR4-61062 on November 5, 1999.
>
> The record further establishes that the defendant was found guilty on May 25,
> 1982, for violation of Louisiana Revised Statute 14:64, armed robbery, in case
> number 287-877, Division I, Orleans Parish.
>
> The record further establishes that the 10-year cleansing period for
> application of Louisiana Revised Statute 15:529.1 has not elapsed.[28]

The record therefore shows that counsel raised an objection in writing on the stated ground

advanced by Spears, but the motion was unsuccessful.    Counsel's performance cannot be

deemed constitutionally deficient simply because he was unsuccessful.    *See Martinez v.

Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004).    No deficient performance has been shown

under the circumstances.    Certainly nothing in the record indicates that a more vigorous

---

[27]  State Rec., Vol. 3 of 4, R.p. 470, Answer and Motion to Quash Multiple Offender Bill
and Reasons for Judgment imposing multiple offender sentence signed November 30, 2012.

[28]  State Rec., Vol. 2 of 4, Transcript of Multiple Offender Hearing (November 8, 2012),
p. 6.

performance by defense counsel at the multiple-offender hearing could have persuaded the trial court to grant the motion to quash the multiple-offender bill or exclude the 1999 predicate offense for lack of sufficient evidence of the applicable cleansing period.[29]    Thus, for the reasons expressed, Spears is not entitled to relief on this claim.

   D.  *Ineffective Assistance of Appellate Counsel*

   Next, Spears argues that appellate counsel was ineffective for not assigning as error for appellate review two grounds in particular, namely "the trial court's abuse of discretion in not granting the motion to suppress the lack of probable cause" and "the trial court's abuse of discretion in not granting the motion to suppress the identification." [30]    Spears emphasizes that "the heart of the case stems around probable cause and identification yet neither were assigned, briefed and argued on direct appeal."[31]

   The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.    *Duhamel v. Collins,* 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).    In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance *every* argument, regardless of merit, urged by the

---

[29] This Court need not address the correctness of the state court's determination with respect to the 10-year cleansing period for application of Louisiana Revised Statute 15:529.1. That issue is not before the Court.    Furthermore, this Court does not sit to review the state courts' application or interpretation of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

[30] Rec. Doc. 1-1, pp. 11-12.

[31] *Id*. at 13.

appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    Failing to raise every meritorious claim on appeal does not make counsel deficient.    *Green v. Johnson,* 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)).    When alleging ineffective assistance of appellate counsel, a petitioner "must show that the neglected claim would have had a reasonable probability of success on appeal."    *Duhamel*, 955 F.2d at 967.    Courts give great deference to professional appellate strategy for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["]    *Jones v. Barnes*, 463 U.S. 745 (1983).    This is true even where the weaker arguments have merit.    *Id.* at 751–52.    The applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. *See*, *e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

Appellate counsel in this case determined that it was not in Spears's best interest to raise these claims.    Instead, counsel reasonably chose to focus solely on the sufficiency of the evidence to support the conviction.    Spears cannot show that the two omitted claims were clearly stronger than the issue actually raised on appeal.    For the reasons previously discussed in this report, the claim that the identification was impermissibly suggestive is meritless.    His claim involving the denial of the motion to suppress is likewise weak.

As grounds for pretrial suppression, he argued that Detective Mahon had no probable cause to conduct the traffic stop from which he obtained personal information from Spears that ultimately led to the positive show-up identification by the victim.    The trial court flatly rejected the argument, stating:

Okay. I don't think I even need to address that, but out of an abundance of caution, the officer testified that he was driving without headlights. I think that gave him probable cause to stop and investigate, but I don't think that that stop is related other than the fact that he realized that may have been the person based on a subsequent identification that he received, but that nothing flowed from that stop and would give rise to suppression of any evidence.

For an investigatory traffic stop, law enforcement officers need only have reasonable suspicion of criminal activity in order to comply with the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1 (1968). Reasonable suspicion is less demanding than probable cause. *United States. v. Sokolow*, 490 U.S. 1, 7 (1989)). A traffic stop is authorized when an officer observes a traffic violation, such as driving without headlights at night. *Wren v. United States*, 517 U.S. 806 (1996); LSA-R.S. 32:301(A)(1); *State v. Rimmer*, 16-649, 2017 WL 2198012 (La. App. 5 Cir. 5/17/17) (finding that defendant's driving the truck at night without illuminated lights provided the officer with an objective basis, or probable cause, to effect the stop of the vehicle).

Detective Mahon testified that Spears's vehicle raised suspicion because of the close geographical and temporal proximity to the crime and the fact that he was driving off without any headlights.[32] He issued no citation and let him drive away from the scene, but later determined that he matched the subsequent description the victim gave of the intruder. At that time, officers were able to locate Spears through the information obtained during the traffic stop and return him to the crime scene where the victim identified him as the intruder. As the trial court determined, the officer had reasonable suspicion for the traffic stop and

---

[32] Detective Mahon testified that he followed the vehicle for a short distance before he stopped it and at some point in time the driver had turned on the headlights. State Rec., Vol. 2 of 4, Trial Transcript, p. 216.

there was nothing about that incident that would lead to suppression of the victim's identification.    Thus, because the traffic stop was based on reasonable suspicion supported by articulable facts under the totality of the circumstances, it was not objectively unreasonable for appellate counsel to decide against challenging the legality of the traffic stop on direct appeal, as such an argument would have been futile.    Appellate counsel need not present every non-frivolous ground that could have been raised on direct appeal and certainly not claims based upon weak or non-meritorious arguments.    *See Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013).    Furthermore, even assuming *arguendo* that appellate counsel's omission of the claims was deficient, Spears has failed to show a reasonable likelihood of a different result on appeal had the claims identified above been raised.

For the foregoing reasons, Spears has not demonstrated that the state court's decision rejecting these ineffective-assistance claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Spears's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this ___18th___ day of _____ July _____ 2017.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[33]  *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.